UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOSHUA JAMES K,[1]

                                   Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                                   Defendant.


_____

DECISION AND ORDER

1:22-cv-00337 (JJM)

         This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security that plaintiff was not entitled to disability

insurance benefits ("DIB"). Before the court are the parties' cross-motions for judgment on the

pleadings [6, 8].[2] The parties have consented to my jurisdiction [12]. Having reviewed the

parties' submissions [6, 8, 9], the Commissioner's motion is granted.

## BACKGROUND

         The parties' familiarity with the 1,429-page administrative record [4] is presumed.

Plaintiff filed an application for DIB in January 2015, alleging a disability beginning on October

_____

[1]         In accordance with the guidance from the Committee on Court Administration and Case
Management of the Judicial Conference of the United States, which was adopted by the Western District
of New York on November 18, 2020 in order to better protect personal and medical information of non-
governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]         Bracketed references are to the CM/ECF docket entries. Page references to the administrative
record are to the Bates numbering. All other page references are to the CM/ECF pagination (upper right
corner of the page).

17, 2014, due to mental health issues.  Id., pp. 154, 172, 175.  This matter was previously remanded from this court.  Id. at 625-32.  The prior Administrative Law Judge's ("ALJ") decision in this matter included an off-task limitation: "[d]ue to concentration and focus problems, the claimant would be off task less than 5% of the workday".  Id. at 14.  The court noted that "no medical provider opined that Plaintiff would be off task less than five percent of the time.  Nor, for that matter, did any medical provider find that Plaintiff would have any specific off task limitation."  Id. at 629.  The court found:

> "The off-task component of the RFC . . . was not tethered to any particular medical opinion evidence and the ALJ gave diminished weight to all of the opinions she addressed. . . . Because the ALJ here did not give controlling or substantial weight to any opinion that supported the RFC, it is unclear precisely where the limitations set forth in the RFC came from and why they did not go further. . . . [T]he matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion".

Id. at 631-32.

The Appeals Council remanded the case to an ALJ "for further proceedings consistent with the order of the court".  Id. at 636.  An administrative hearing was held on October 19, 2021 before ALJ Bryce Baird.  Id., pp. 522-59 (transcript of hearing).  Plaintiff, who was represented by an attorney, testified along with Board Certified Psychiatrist Chukwuemeka Efobi and a vocational expert ("VE").  Id., pp. 527-57.  At the hearing, plaintiff's attorney amended the claim to reflect a closed period of time from October 17, 2014 through May 27, 2019 to reflect plaintiff's return to work on May 28, 2019.  Id. at 535.

## ALJ BAIRD'S DECISION

On January 6, 2022, ALJ Baird issued a decision concluding that plaintiff was not disabled.  Id. at 502-14.  To reach that determination, ALJ Baird found that plaintiff's severe

impairments were major depressive disorder, generalized anxiety disorder, obesity, and history of substance abuse in remission.  <u>Id.</u> at 505.[3]  He found plaintiff had the residual functional capacity to perform  medium work, with limitations to:

> "[W]ork consisting of simple, routine tasks that can be learned after a short demonstration or within 30 days, can perform work that does not require production rate or pace, can have occasional interaction with coworkers and supervis[ors] and no more than superficial contact with the public, cannot perform work that requires teamwork, such as on a production line, and can perform with [*sic*] that requires doing the same tasks every day with little variation in location, hours, or tasks."[4]

<u>Id.</u> at 507.  ALJ Baird did not include a limitation for off-task time.

## OPINION AND OTHER EVIDENCE

Among the opinions that ALJ Baird considered in his analysis to arrive at the RFC was the October 19, 2017 Mental T[r]eating Medical Source Statement of plaintiff's licensed mental health counselor, Peter Mittiga.  <u>Id.</u> 511, referring to 494-98.  LMHC Mittiga found that plaintiff was "unable to meet competitive standards" in three functional abilities related to a person's ability to do unskilled work:  accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and dealing with normal work stress. <u>Id.</u> at 496.  For each of these categories, LMHC Mittiga explained that plaintiff's difficulty in these areas was "due to his depression and anxiety".  <u>Id.</u> at 496.  In addition, LMHC Mittiga indicated that plaintiff is "seriously limited" in his ability to: interact appropriately with the

---

[3]    Plaintiff does not challenge these findings.

[4]    ALJ Baird also assessed some physical limitations.  Plaintiff does not challenge those findings.

general public; maintain socially appropriate behavior; and travel in unfamiliar places.  Id. at 497.  He further explained that plaintiff "has severe anxiety when around the general public" and "becomes highly anxious around others, and often avoids areas where there [are] large groups of people".  Id.  He explained that when "extremely anxious and depressed", plaintiff "has had moments of severe anger resulting in him not being socially appropriate around others".  Id.  He opined that plaintiff would miss approximately four days of work per month due to his impairments or treatment and stated that plaintiff's "depression and anxiety lead to severe anger which limit[s] his ability to work".  Id. at 498.

ALJ Baird gave this assessment "limited weight".  Id. at 511.  He explained that he found the categories used in the form "vague".  He explained further that:

> "[C]laimant received only counseling and medication.  He did not require mental health hospitalizations after his release from the Cornerstone program in April 2015.  Moreover, mental status examinations throughout the record . . . do not delineate the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled.  Moreover, the claimant reported doing well with medications . . . and recommended treatment such as coping techniques".

Id.

Earlier in his analysis, ALJ Baird outlined plaintiff's mental health treatment records.  They reflected medication management and adjustments, and regular counseling.  Id. at 508-509.  His mental status examinations were often normal.  Id.  The notes reflected occasional increase in symptoms due to stressors such as "denial of his application for benefits, as well as some other financial stressors" and "school-related stress".  Id.  Reports of increased symptoms in the fall of 2018 led to medication adjustments and a referral to peer support.  Id. at 509.  Despite plaintiff's self-reports, however, there were no significant changes to plaintiff's mental status examination.  Id.  Other treatment notes from 2015 through his return to work in 2019

- 4 -

document plaintiff's reports that he was "doing the best he ever had", acknowledged the

"benefits of his healthy supports," and was doing well in school.  Id.

ALJ Baird assigned "great weight" to Dr. Efobi's testimony.  He testified that,

once plaintiff achieved sobriety, his condition improved:

> "Q: [I]s there a date in your mind where you think that his
> recovery brought him to the point 3where he would no longer be
> suffering under medically determinable impairments, or does he
> continue to suffer from those?
>
> A: Yeah, that was a good question.  All right.  See, early 2015, like
> I said, around April was when I saw the improvement pick up.
> Then, let's see, and then about later 2015, which would be about
> 20F, page 8, 11/13/15, he had cut down the subjective rate of his
> depression to five out of ten, which was a significant improvement.
> And then moving forward, he started classes at the ECC, that's on
> 20F, page 3, which was February of 2016.  So, the window is
> really very small between sobriety and period of improvement."

Id. at 531.

ALJ Baird also assigned "great weight" to the consultative examination reports of

Susan Santarpia, Ph.D. and Christine Ranson, Ph.D.  Id. at 510-512.  Based on their respective

examinations, which occurred on April 14, 20215 and August 7, 2021, respectively, they found

that plaintiff had no functional limitations.  Id. at 311-15, 510-12, 844-50.

## DISCUSSION

### A.    Standard of Review

"A district court may set aside the Commissioner's determination that a claimant

is not disabled only if the factual findings are not supported by 'substantial evidence' or if the

decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42

U.S.C. §405(g)).  Substantial evidence is that which a "reasonable mind might accept as

adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305

U.S. 197, 229 (1938).  ).  "[U]nder the substantial evidence standard of review, it is not enough

for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the

evidence in the record could support her position.  Plaintiff must show that no reasonable

factfinder could have reached the ALJ's conclusions based on the evidence in the record".

Cheatham v. Commissioner, 2018 WL 5809937, *9 (W.D.N.Y. 2018); *see also* Brault v.

Commissioner, 683 F.3d 442, 448 (2d Cir. 2012) ("the substantial evidence standard means once

an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to*

*conclude otherwise*") (emphasis in original).

        An adjudicator determining a claim for Social Security benefits employs a five-

step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff

bears the burden with respect to steps one through four, while the Commissioner has the burden

at step five.  Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012).


**B.      Did ALJ Baird Properly Assess LMHC Mittiga's Opinion?**

        Plaintiff argues the ALJ erred in evaluating LMHC Mittiga's opinion.  Plaintiff's

Memorandum of Law [6-1] at 12.   He argues that the ALJ "gave several statements to reject this

opinion, but these simply do not explain the weight given or ensure that a subsequent reviewer

could follow his reasoning".  Id.  He also asserts that the ALJ did not consider the factors he was

required to consider when evaluating an "other source" opinion. Id. at 13-16; *see also* 20 C.F.R.

404.1527(c).  The factors are:

> "(i) the frequency of the examination and the length, nature and
> extent of the treatment relationship; (ii) the evidence in support of
> the treating physician's opinion; (iii) the consistency of the opinion
> with the record as a whole; (iv) whether the opinion is from a
> specialist; and (v) other factors brought to the Social Security
> Administration's attention that tend to support or contradict the

opinion."

Saxon v. Astrue, 781 F Supp 2d 92, 102-03 (N.D.N.Y. 2011).

I agree with the Commissioner that ALJ Baird sufficiently explained his rationale and that his decision demonstrates that he considered each of the relevant factors. With respect to the first factor, although ALJ Baird did not describe LMHC Mittiga as a "treating" mental health counselor, he cited many of LMHC Mittiga's treatment notes in his decision, in addition to notes authored by other treating practitioners at Lakeshore/Best Self Behavioral from 2015 through 2019. See [4] at 508-509 (references to exhibits 15F and 20F). He also noted that the opinion LMHC Mittiga authored was a "medical source statement", a kind of opinion solicited from a treating medical provider. I find that these details demonstrate that ALJ Baird considered "the frequency of the examination and the length, nature and extent of the treatment relationship".

As for the second and third factors, ALJ Baird discussed at some length the contents of plaintiff's treatment records and explained in his analysis of LMHC Mittiga's opinion that the treatment records "do not delineate the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled". Id. at 511. ALJ Baird discussed the treatment notes fairly extensively and included citations to the negative findings therein in addition to the mostly positive documentation. Id. 508-509.

ALJ Baird referenced this discussion during his analysis of LMHC Mittiga's opinion, by noting the treatment plaintiff received ("claimant received only counseling and medication" and "did not require mental health hospitalizations after his release from the Cornerstone program"), the effect of his medication regimen (he "reported doing well with medications"), recommendations for other treatments ("coping techniques"), and results of

- 7 -

mental status examinations over time ("mental status examination throughout the record . . . do not delineate the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled").  Id. at 511.   Based on this evidence, ALJ Baird explained that the "overall record evidence supports that the claimant could perform a range of unskilled work" with the additional limitations that he incorporated into the RFC.   I find that this discussion is sufficient to satisfy ALJ Baird's obligation to consider factors two and three: the evidence in support of the treating physician's opinion; and the consistency of the opinion with the record as a whole.

Plaintiff urges the court to reject ALJ Baird's treatment of LMHC Mittiga's opinion because he noted "that Plaintiff did not require hospitalization".  Plaintiff's Memorandum of Law [6-1] at 14.  He reasons that "in the ALJ's view, not being able to work must require an acute hospitalization".  Id.  I disagree.  Whether plaintiff was hospitalized was but one part of ALJ Baird's reasoning.  His opinion demonstrates that he considered that plaintiff did not need to be hospitalized during the closed period at issue in the context of his prior hospitalization, the more limited treatment he received during the closed period, and the evidence of plaintiff's progress in his own treatment notes:

> "While notations indicated the claimant is 'unable to meet competitive standards' or 'seriously limited' in interacting with others, dealing with stress and maintaining appropriate behavior, the claimant received only counseling and medication.  He did not require mental health hospitalizations after his release from the Cornerstone program in April 2015.  Moreover, mental status examinations throughout the record . . . do not delineate the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled.  Moreover, the claimant reported doing well with medications and recommended treatment such as coping techniques".

[4] at 511.

Given the full context of ALJ Baird's analysis, I do not agree that he improperly equated a lack of hospitalization with a lack of disability. He considered that plaintiff did not need any other inpatient treatment – an important detail in the context of plaintiff's prior treatment. Further, he considered the clinical findings upon examination, and plaintiff's response to his medications and other treatments. Such an analysis indicates proper consideration of whether the medical opinion being considered is supported by, and consistent with, other evidence in the record.

With respect to the final factor, ALJ Baird sufficiently demonstrated that he considered LMHC Mittiga's specialty. He accurately identified Mr. Mittiga as a licensed mental health counselor.

Next, plaintiff argues that ALJ Baird put the cart before the horse by assigning weight to LMHC Mittiga's opinion based on its consistency with the RFC. Plaintiff's Memorandum of Law [6-1] at 15-16. I do not agree. The only evidence plaintiff puts forth for this argument is the final sentence of ALJ Baird's analysis of LMHC Mittiga's opinion, which states that "the overall record evidence" supports that the plaintiff "could perform a range of unskilled work" with certain limitations. It does not say that LMHC Mittiga's opinion is being discounted because it is inconsistent with the RFC. Instead, ALJ Baird's analysis explains why he gave limited weight to LMHC Mittiga's opinion when he crafted the RFC and did not incorporate greater restrictions into the RFC that more closely align with the opinions in LMHC Mittiga's medical source statement.

Plaintiff's final argument with respect to ALJ Baird's analysis of the medical evidence is that ALJ Baird improperly relied upon "the consultative examination opinions from Drs. Ransom and Santarpia, and the non-examining opinion from Dr. Efobi. Id. at 16-17. He

argues it is "'particularly egregious' to rely solely on a non-examining opinion in psychiatric cases". <u>Id.</u> at 17.  However, it is "well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. . . . The opinion of a non-examining source may override that of an examining source, even a treating source, provided the opinion is supported by evidence in the record."  <u>Maleski v. Commissioner</u>, 2020 WL 210064, *4 (W.D.N.Y. 2020); *see also* <u>Camille v. Colvin</u>, 652 F. App'x 25, 28 (2d Cir. 2016) ("[t]he ALJ was permitted to consider [treating] Dr. Dawood's treatment notes in weighing the opinions of Dr. Dawood and [consulting psychologist] Dr. Kamin; and she was permitted to conclude that Dr. Kamin's opinion was more reliable").

This is what ALJ Baird did here.  He considered the testimony and opinion of psychiatric expert Dr. Efobi.  ALJ Baird noted that Dr. Efobi "had the complete record available to him for his review".  [4] at 510.  He gave "great weight" to Dr. Efobi's opinion because his "assessment is supported by his citation to the record and is further supported by the claimant's testimony".  <u>Id.</u> at 512.

ALJ Baird also assigned "great weight" to the opinions of consultative examiners Dr. Santarpia and Dr. Ransom.  <u>Id.</u> at 510-11.  Dr. Santarpia examined plaintiff in April of 2015 and Dr. Ransom examined him in August of 2021.  <u>Id.</u> at 509.  After examining plaintiff, the results of which ALJ Baird summarized in detail (<u>id.</u> at 509-10), both consultative examiners found that plaintiff had no functional limitations.  ALJ Baird considered each expert's opinion in the context of their findings on examination and in the context of plaintiff's treating records and his own testimony.

For example, he concluded that "Dr. Santarpia's opinion is given great weight as her conclusions are consistent with her own findings, particularly an essentially normal mental status examination . . . However, the claimant continued to endorse symptoms of depression in his treatment records, and his subjective reports support greater limitations, particularly in social functioning". Id. at 510.  Further, Dr. Ransom examined plaintiff approximately two years after the close of the period at issue.  ALJ Baird noted that at the time of her examination, "the claimant had been maintaining employment for about two years, and the finding of no limitations in the claimant's ability to perform the mental activities of work is consistent with his work activity". Id. at 511.

None of ALJ Baird's analysis was improper.  He was entitled to rely upon these opinions.  Further, he adequately explained his treatment of all the opinions in such a way that one could understand why he made the determination he did, and upon which evidence.  I find that his analysis, read as a whole, satisfies his obligation "to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached". Lopez obo Y.T. v. Commissioner of Social Security, 2020 WL 4504987, *2 (W.D.N.Y. 2020) (internal quotation omitted).  Although there is evidence in the record that could support different findings, "there is substantial evidence to support the ALJ's decision.  The Commissioner, not the Court, is responsible for weighing conflicting evidence." Pagan o/b/o Delgado v. Barnhart, 409 S.Supp.2d 217, 220 (W.D.N.Y. 2006).

**C.      ALJ Baird Properly Followed the Court's Remand Order**

Plaintiff's final argument is that ALJ Baird's decision is not supported by substantial evidence because he failed to "address off task time at all" when this court had

remanded the prior ALJ's decision "for this highly specific finding". Plaintiff's Memorandum of

Law [6-1] at 18.

In its previous decision, the court noted that "no medical provider opined that

Plaintiff would be off task less than five percent of the time. Nor, for that matter, did any

medical provider find that Plaintiff would have any specific off task limitation." [4] at 629. The

court found:

> "The off-task component of the RFC . . . was not tethered to any
> particular medical opinion evidence and the ALJ gave diminished
> weight to all of the opinions she addressed. . . . Because the ALJ
> here did not give controlling or substantial weight to any opinion
> that supported the RFC, it is unclear precisely where the
> limitations set forth in the RFC came from and why they did not go
> further. . . . [T]he matter is REMANDED to the Commissioner for
> further administrative proceedings consistent with this opinion".

Id. at 631-32.

ALJ Baird did not incorporate any off-task time into the RFC. Plaintiff argues

this is problematic ([6-1] at19) because, in ALJ Baird's discussion of LMHC Mittiga's opinion,

he states:

> "The overall record evidence supports that the claimant could
> perform a range of unskilled work with limited contact with
> supervisors, coworkers and the public, no production pace, stress
> levels limited to unskilled work **and some off task time**, which are
> included in the residual functional capacity".

[4] at 511 (emphasis added).

This language follows from the prior ALJ's decision, which incorporated the

same language in a nearly identical paragraph concerning LMHC Mittiga's opinion. See id. at

20. However, this inclusion of a mention to "some off task time" does not indicate that ALJ

Baird failed to follow the instructions of this court. ALJ Baird noted at the beginning of his

decision that "[t]he District Court found that the inclusion of a limitation for time off task in the

previous decision was not supported by substantial evidence and remanded the case for further consideration". Id. at 502. He did not include any off-task time in the RFC, and this was supported by the medical opinions of Drs. Efobi and Santarpia, to which he assigned "great weight". Id. at 510, 512. Accordingly, unlike the previous determination, here there were opinions, to which the ALJ accorded substantial weight, that supported the RFC. Neither discussed any need for off-task time. Based on this evidence, I find that ALJ Baird remedied the issue identified in this court's prior decision.

Further, plaintiff does not identify any opinion that supports an off-task time finding. "Ultimately it is [p]laintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ". Beaman v. Commissioner, 2020 WL 473618, *6 (W.D.N.Y. 2020). Here, plaintiff did not do so.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [8] is granted and the plaintiff's motion [6] is denied.

**SO ORDERED**.

Dated: March 31, 2025

        /s/   Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge